0883 Whenever you're ready, Ms. Worsham. May it please the Court. My name is Marla Worsham and I represent, uh, Joseph Langston in this matter, the Appellant. I'd like to reserve two minutes for rebuttal and cede the podium after ten minutes. Uh, the issue we're here for today is that the, is a bankruptcy issue. If at the end of a creditor's meeting, the trustee fails to announce a continued date for the creditor's meeting and fails to promptly state, file a statement showing the continued date and time is required by Rule 2003E to reconvene the meeting. Has the creditor's meeting been concluded? And we would show this Court that it has. In this case, the facts are, Your Honor, that Mr. Langston filed a Chapter 7 bankruptcy proceeding in September of 2019. And as part of that filing, he duly filed a list of property he was claiming as exempt. The trustee in this case conducted seven creditor's meetings. At the last creditor's meeting that was conducted, it's undisputed, the last one was on May 26th of 2021, over two and a half years after the case was filed. The trustee did not announce a date for a continued meeting, nor did he file a statement in the record saying a date that the meeting would be continued to. So . . . But it's certainly true, and you have your statutory argument as the effect of that. Wasn't it clear factually that there was to be another meeting? Wasn't what we know about that last meeting, that there was more information to be acquired? Your Honor, the trustee did announce his intent was not to conclude the meeting at that particular time. But under the rules, the creditors put on notice, as a creditor in a bankruptcy, that he needs to take some action if the trustee doesn't conclude the meeting. He could have filed a motion to extend the time, or he could have gone ahead and just filed the objection to exemptions that he had mentioned he was going to do several times earlier. Instead, he did nothing. But at that hearing, counsel for Langston then was different. It was Ornstein, correct? Yes, Your Honor. And Ornstein's the one who's saying, Mr. Langston and I need more time. I really need that. You know, am I correct? I'm reading from it right here. And Cruz says, Okay. And then Mr Sherman says, Okay, guys, we're gonna shut it down for right now. I'll get back to you. Yes, Your Honor. But that is what happened. So so so Mr Sherman, who would later say, brutally, honestly, he had case fatigue. Um, he's really accommodating Mr Langston, who needs more time to provide the material. And so if you have Langston and his attorney both saying we need more time, he is. He is accommodating the request for more time. But he's also keeping the meeting open, had been keeping the meeting open over these other seven continuances to basically allow the creditor free discovery. The creditor could have filed his motion for exemptions at any time. The creditor could have. But again, the extension, you know, admittedly imperfect, was at the request of Langston to fulfill his obligations. So how is it that he can then claim under 4000 and three that times elapsed? My exemptions are solid. Well, Your Honor, under as a United States Supreme Court is held in Taylor in a case over the exemptions. Sometimes deadlines have harsh consequences, but they're necessary in bankruptcy to promote finality and promptness of cases. And the threshold issue before you get to the merits of the exemption is whether or not it was timely. So we believe under Taylor and ruled 4000 and three, the creditor had to file is, you know, of any case for the applying force out 1003 where the trustees error penalizes the creditor because there's plenty of case law that says, Well, trustee, no clean hands. We're not going to give you equitable consideration. But here it's the creditor who's getting punished. Well, the creditor did have remedies. He didn't avail him of itself. But no, Your Honor, I have not been able to find a case that makes a distinction. Um, in this scenario where the trustee gave the time, the rule makes no distinction between the cases you do cite that support your position are all court saying to the trustee. Now we're not gonna allow an untimely filing because you're the one that didn't indicate when the reconvening would occur. Well, Your Honor, in the in Jenkins in the Fourth Circuit, similar case, the trustee, um, after multiple continuances intended to continue the meeting, he did not continue the meeting in that case, right? The creditor did not. Well, the objection was not filed until after the 30 days in the court determined that, um, that the objection was not timely based on the amendments to Rule 2003 E that talk in language of word promptly and shall well. So the trustee violated Rule 2003. But the rules don't say what happens to remedy that violation. In other words, you're arguing that Perez, our case that binds this panel, unless it's been superseded, clearly superseded, you know, we adopted this case by case approach instead of the bright line rule. You're advocating for this bright line rule. You've got to follow Rule 2003. And if the trustee doesn't follow it to a T, announce at the meeting and file something promptly saying when the next meeting is, and that's what the trustee didn't do here, well, creditors pay the price for that. I mean, but the rules don't say that. In other words, doesn't Perez survive the amendment to 2003 because we still have to come up with what happens in this case? We believe it does not survive the amendment, Your Honor. What's your support that 2003 applies in such a rigid way? I mean, the bright line rule is one thing. Trustee has to follow it. But how do you fill in that remedy is always going to be this, creditor loses out? Well, under the Fourth Circuit finding in Jenkins, which we realize is not this circuit, we believe the Court should adopt that reasoning in that it's not an absolute bright line rule, but it's if the trustee in Jenkins made no attempt to comply with either part of Rule 2003 . . . Well, right. Jenkins stopped short of adopting the bright line rule, but Jenkins was also dealing with the trustee's error that the trustee then tried to get around by filing an untimely objection. That's not what we have here because here the creditor is trying to file what the creditor was told would be a timely objection, and now the debtor comes in and says, sorry, it's untimely, Rule 2003. Yes, Your Honor, but the creditor, excuse me, the trustee is not the Court. The trustee simply did not have the authority to make the statement he did about giving more time. What about Section 105, the bankruptcy court's equitable powers? Because here, again, you've got the debtor saying, I need more time to get this information produced so the creditor can even finish the discovery. So why can't the bankruptcy court, or why can't we affirm the bankruptcy court just based on unclean hands, latches, or estoppel? Well, the . . . this Court has found the use of 105 powers to correct mistakes by the Court, not by the trustee. In the case in Ward, it was the Court's error that put the different creditor's dates in the . . . when they transfer districts. This Court has also found in Smith that when the bankruptcy court, or the bankruptcy rules provide for a remedy, such as they do here in Rule 4003e, by asking for more time, are going ahead and filing the objection to exemptions, you cannot use . . . 105 powers cannot be used to expand what's already in the bankruptcy court. And in Smith, it was the time to file a proof of claim. Wouldn't a debtor then have the ability to argue that a creditor who filed an objection come back and say, well, it's premature, we don't even know, we're trying to produce information, and you don't have the ability to support the exemption? Well, Your Honor, there are a couple of remedies for that. The creditor could have taken a Rule 2004 exam before filing the objection to exemptions to see if more materials were there, or they could . . . But we knew more material was there because the debtor said so. Well, they could have also gone ahead and, when the meeting was concluded on May 26th of 2021, when the trustee didn't take any action to file the statement or put the announcement on the record, the creditor could have taken action by either filing a motion for extension or filing its objection and then going ahead and taking discovery. How long was the creditor to wait on the trustee? Well, under the rules, the creditor is charged with knowledge and should have not waited more than the 30 days to either ask for more time . . . Thirty days from when? When that last meeting was held with no trustee announcement as to when the meeting would be continued. But how long does a creditor wait on a trustee's filing of the requirements under 2003? Well, the rule says promptly. What does that mean? The case law that we've been able to find, not on this point, measures promptly in days, not months. But if a creditor is deemed to be aware of the rules, and as that 30 days is ticking, we believe the creditor should have contacted the trustee or gone ahead and filed its motion. I'm out of time. Thank you, counsel. Good morning. May it please the Court, my name is April Maxwell, and I'm appearing on behalf of the MSI, the National Consumer Bankruptcy Rights Center, and the National Association of Consumer Bankruptcy Attorneys. Welcome. Good morning. There were around 53,000 bankruptcies filed in the last year in the Fifth Circuit, which are about a tenth of the bankruptcies in the nation. And every single one of those bankruptcies required a 341 meeting. And in every single one of those bankruptcies, the creditors got notice of a number of things. They got notice of the meetings, they got notice of their deadlines, and they also got implicit notice that bankruptcy runs on a very fast schedule. And they were known that their deadlines are going to run quickly. Does this case sort of violate that from the get-go? Started in 2019, seven different meetings, whatever the total number is. Whatever message is given to those 50-some-odd thousand, the trustee and the parties here didn't get that message. And it's not just at the end, it's throughout the  So you're saying at this very end, a block wasn't checked and objection to the exemption can't be filed. It does seem to me this is a poor case for that argument. Your point is taken. This definitely has not been a very fast case. However, the rules that were put together were put together to ensure that it runs in an efficient and a timely manner. But your bright line rule gets very fuzzy. How long does a creditor wait after the trustee fails to comply with 2000E to go ahead and file an objection or an extension? Henry Smith from the Ninth Circuit says it has to be at least within the 30 days of when the deadline was passed. Thirty days from when, though? From when the last meeting of creditors was held. But how long are the creditors supposed to wait on the trustee to file the notice that's required under 2003? How long are they supposed to wait? As we've argued, it says promptly. There's cases in many different areas of the law that discusses whether 6 days, 48 hours, or promptly. What about a case that involves the debtor needing more time to gather information, which everybody at the creditors' meeting in May of 2001 acknowledges? What does promptly mean then? Rule 2003 places the onus of being able to extend a meeting of creditors on the trustee. I get it, but what does promptly mean? And the onus is extended to the creditors if the trustee violates the rule. Is your position? I'm sorry. Can you— We're basically going—we're being asked by the debtor here to deny the plaintiff's objections as untimely, not even reach the merits, not let the bankruptcy court reach the merits. So basically, the trustee's failure here is going to destroy the creditor's ability to file the objection because it was untimely, again. So the onus is maybe on the trustee, but it's transferring to the creditors if they don't act promptly enough to take matters into their own hands, I guess, if the trustee doesn't follow that rule. Well, the onus is always on the creditors when they blow their deadline. This is essentially a question of a blown deadline. But I'm asking when the deadline starts to tick. So I would argue that 48 hours from the last meeting of creditors within that time period would be considered promptly. It doesn't say 48 hours. You're right. It doesn't. Promptly. You're right. It doesn't say 48 hours. It does say promptly. And they adjourned the meeting because the debtor needed to collect more information to produce to the creditor so the creditor could then evaluate its objection. It's how I'm distilling the case. Maybe that's oversimplifying it, but everybody understood that when they adjourned that meeting on May of whatever, 2021. So how do we say that the creditor blew its deadline? When did the deadline start to run? The creditor had knowledge of the last meeting of creditors deadline or date. The creditor had knowledge of the rule in 2003 that only gave you 30 days and also said — excuse me, 2003 doesn't give you 30 days, but they know the rule that says — It's 2003 and 4003. Yes. Thank you. 4003 says 30 days. They understood that under Rule 2003, there was a certain prescribed way to be able to extend the meeting of creditors date. And so if I was the creditor's attorney on day 29 is when I file a motion for extension or something along those lines, making sure that I was preserving my right to object because of — From your system-wide perspective, no one here is disputing that the trustee has stopped, and the 2011 amendments didn't change that. Do you have a case where the trustee's failure to comply actually penalizes the creditor? Offhand, where it was exactly the creditor who was penalized, I don't necessarily have one of those cases. And so therefore, if there isn't, and I didn't see one myself, do you agree with Ms. Warsham's position that it all changed in 2011, that the amendments were designed to eliminate Perez, overrule Perez, and now we have a bright-line rule? Because when I read the commentary, I don't see anything about overruling. You would know. It looked to me instead those amendments were designed sort of for the opposite, which is the new tax requirements. So that's a double question. Do you agree with her that the 2011 amendments implicitly overruled our Perez decision, yes or no? Yes, I do. Okay. And am I wrong that the commentary doesn't say it's overruling circuit authority, and it does say that it's aiming at a tax requirement situation that had been imposed? It doesn't necessarily say, so Judge Linden originally wrote the letter saying, I'm concerned about the tax requirement. Let's figure out how to make sure that everybody knows how this meeting is extended. You've got time. Okay. Let's make sure everybody knows how this meeting is extended, especially when we're looking at tax returns. The committee talked about this, and they decided we don't need an entire new section. We don't need the F that Judge Linden proposed. We think the most efficient way to do this is to just propose, just to amend Rule E and make sure that there is a very specific way, and as there's a very specific way that everybody knows, so everybody knows their deadlines. As Collier on bankruptcy says, this rule was designed to prevent indefinite injurment, which in itself does overrule Perez, because under Perez, there was no, it was allowed to adjourn and die, and the rule change eliminated that. Well, okay, but we still, don't we take a case-by-case approach as determining what to do when there's been a violation of 2003? To be fair, Jenkins actually does not adopt a strict line rule. They adopt more of a case-by-case approach, but even . . . They do cite Perez, but they do also say that the Sendai approach taken in Perez is implicitly overruled by this, by the change in the rules. They leave it a little bit open, what they mean by their case-by-case approach, but they do say that they don't like the bright line rule because they want to be able to, they want to be able to leave it open for the, for the trustee who earnestly tried to comply with the rule, but who did not. However, in a footnote, they also do say that extensions due to extraordinary circumstances will be rare, given that the compliance with Rule 20, 2003E requires very little and is entirely within the trustee's control. Yes, oh, please. You heard my questions to counsel before you about waiver. And when Jenkins, the Fourth Circuit says there are exceptional circumstances, why wouldn't this be one where, right, the debtor himself says, I need more time? So the whole problem was because Langston, through his prior counsel, is saying, I need more time. How is it that he can then say, I got you? So my client's interest is definitely more concerned about the public policy . . . Do you have an opinion on waiver, whether that's our availability here? My opinion, that in any court proceeding in any area of the law, it doesn't really matter what the person says. It matters what shows up on the docket. Somebody may say, hey, I'm going to file this, but if it doesn't get filed, your deadlines still continue as it is. If it doesn't show up on the docket, the deadlines continue as it is. So, my opinion is that until there is . . . until Rule 2003 is complied with, and it has . . . the time has been announced and shows up on the docket or has been filed, then you're meeting . . . then you have 30 days from the last meeting of creditors to be able to file your objections. Okay. Thank you. Thank you. Thank you. Thank you, Your Honors. May it please the Court. My name is Baltazar Cruz. I'm here on behalf of the Appellee Dallas Commodity Company. There's a couple of waiver issues that I want to address initially, and one is that they have asserted a different appellate issue than what they asserted in the lower courts. In the Northern District of Texas, they asserted two issues. One was, did the bankruptcy court err by overruling the debtor's untimeliness objection to the Dallas Commodity Company's objection to the exemptions of debtor's individual retirement accounts? And issue two was, did the bankruptcy court err in holding the debtor's individual retirement accounts are not exempt and therefore constitute property of the bankruptcy estate? Now, they've asserted in their reply brief that they are dropping the second issue altogether, so they are no longer contesting the correctness of the bankruptcy court's ruling that the individual retirement accounts are not exempt. Now, they have rephrased their other issue as, is this court's prior ruling determining when a creditor's meeting is concluded binding when the applicable bankruptcy rule has been amended, which I find vexing because it's a different issue . . . Before you explain how it's vexing, are you defending the district court's conclusion that the meeting concluded on March 9th, 2022? Yes. But there was no meeting then. That's just a docket entry. Well, it has to have concluded when the bankruptcy trustee said, I am concluding the meeting. We can't be retroactive. We can't travel back in time. And you all identified perfectly well . . .  We also can't imagine a meeting occurred when no one is arguing there was a meeting. It was a docket entry. Right. So, well, the question is, when was it concluded? And as a matter of fact, it was concluded when the bankruptcy trustee said, I am concluding the meeting. And he can't go back in time and say, I'm concluding it, you know, 10 months ago. That's completely unfair. That doesn't give us an opportunity then to file exemptions. And then you'll see there was the email to the bankruptcy trustee that was . . . But you waited many, many, many months before you sent that email, right? That's their point, which is you could have asked for an extension at any point. Well, there was no reason to because we were still waiting on all of the documentation. He had agreed to amend his financial statement, his bankruptcy schedules, and provide a bunch of additional documentation and information that he still had not provided to us. And it was the very same day that the bankruptcy trustee said, I am concluding the meeting of creditors, that then Mr. Stanford sends him an email a couple hours later and says, hey, wait a minute. Do we have 30 days from now, or are you saying we have 30 days from 10 months ago? And the bankruptcy trustee immediately responds, it was my intent that you have 30 days from today. That may have been the trustee's intent, but the trustee can't reinvent the bankruptcy rules, the procedures. I mean, the bankruptcy trustee wouldn't have had authority to say, well, no, it's my intent for you to have 30 days. You can't say that as a trustee, irrespective of what the rules require, right? Well, sir, are you suggesting then that on March 9th that he could say, yes, I previously told you that we were continuing the meeting of creditors to give the debtor an opportunity to provide you this additional information and to amend their schedules, so then you can ask him about the amended schedules, which he hasn't done yet, but now I'm saying we're going back 10 months, and I'm concluding it as of then, and now your objections were due 10 months ago. Well, the docket entry, if I recall, of March 22 refers back to the May 2021 meeting, correct? It does. And so we asked for clarification immediately that very same day, and he said, no, no, no. What I meant is that you have 30 days from today. It's just, it's really a leap to think that you can say, oh, this happened 10 months ago, and you're not, you can't do anything about it, and I think you all have done a good job of identifying that issue, but I want to point out another thing, too, is that they had notice on the very day that the meeting of creditors took place that the bankruptcy trustee intended for it to be continued, and they consented to that. They certainly did not object to that. There was discussion with Ms. Ornstein about, you know, what needed to happen for this to be rescheduled. She did not object. I think if this court wants to adopt a rule that would make sense, it would be that in order to be consistent with the arguments that they're making, is that the debtor has noticed that the bankruptcy trustee has not given a date for the continuance of the hearing of the meeting of creditors right there and then, and this court should rule that if they intend to make an objection that at the meeting of creditors, the bankruptcy trustee failed to tell you when it was going to be reset. They have to make that objection then and not, I think they waived it in this particular instance. That rule would overturn the whole body of law that then even the trustee could delay. If that's the rule, that the burden is shifted to the debtor, are you saying then the trustee can wait a year for not, it hasn't concluded anything, then it objects to the exemption? What I'm suggesting is that just on the very specific point they're making, where they're complaining about the bankruptcy trustee not announcing the date of continuation of the meeting of creditors, since they knew that he had not done that at the meeting of creditors, they could have objected right there and then. Why would the onus be on the debtor? Why not put the onus on the creditors? It's a creditor's meeting. Well, yes, but the, in fact, and the creditors are bound by the bankruptcy rules just like every other party, correct? Right. Now, it's interesting. A lot of these interests are actually addressed in one of the cases opposing counsel cited here, 221F3-1101, which is inter-ray John Douglas Smith v. Kennedy that I just got a chance to look at right before this hearing. And the court addresses a lot of these issues. They said, now, this is a case that obviously predates the 2011 amendments, but I think the interests are still the same. And they said, we hold that an adjournment of a 341A hearing does not conclude the hearing merely due to the absence of a future specified date. Adjournments. Yeah, but if that's pre-2011 rules, it now says shall. What it says is shall, it says that he shall promptly, after the hearing, notify when the continuance is going to take place. Well, whatever promptly means, there's an elegant simplicity to what the debtor's position is here. If the trustee fails to follow that rule, 2003, it's on the creditors to move for an extension of time to make sure that the creditors preserve the creditor's objections. So why didn't you do that here? Well, I thought we were in good shape, because he still had not amended his bankruptcy filings. He still had not provided us all the documentation and information that he had agreed to do. I listed in our brief all of the things. You thought you were in good shape, but at some stage it's obvious the trustee has not followed Rule 2003. And in the absence of compliance with that rule, doesn't the creditors' meeting conclude? Well, I think at some point the bankruptcy trustee has to say, you know, I'm concluding the meeting of creditors. Now, the bankruptcy trustee, in fact, did that, but they're arguing that he did it retroactively, and I don't think you can do that kind of time travel. Whatever promptly means, it doesn't mean months and months and months, not in the bankruptcy context, does it? Well, even if that is correct, as you pointed out in your questioning, the rule does not say what the penalty is. And unlike other rules, you know, there are other rules. Like, for instance, if you do not make an objection to dischargeability of debt within the required period of time, then the rule specifically says that that is waived. There's no similar rule that tells you what the consequences are in this particular situation. So that is a very different thing. Now, you also pointed out 11 U.S.C. Section 105A provides that, and I'm quoting it exactly, the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abusive process. And one reason I wanted to highlight that is that opposing counsel said that that was only applicable to rulings of a court and could not be applied to something that a trustee did. And there is nothing in that language that precludes the court from applying that to a mistake that a trustee makes. Now, let me very quickly mention one other thing, which is that they are completely exempt from parole. Thank you.  I apologize. I didn't know you were trying to ask me a question. What are you saying is the effect of the 2011 amendment? It seems to me your argument is nothing. It had no effect at all then when it says the trustee must. It really didn't change anything under Perez. Well, Help me with that. What was the ... I don't ... Actually, The reason is that there are different things in the committee's report about what the possible reason is. So tell me what changed when that statute was amended. I think it did two things. It no longer required the bankruptcy trustee to announce during the meeting of creditors when the meeting of creditors was going to reconvene, but it did require him sometime afterwards to inform the parties in writing when it was going to reconvene. So he could say I'm going to reconvene this and then have to give you an exact date at the hearing as I understand it. You said it was required during the meeting beforehand. Now this gave him an opportunity to require it within a fairly prompt period of time. But you're also arguing it really has no effect because we can ignore that in circumstances such as this. So I don't see from what you're saying that the change has any effect. I think the impact is minimal. And I think that the case law shows that there are equitable considerations that still need to be taken into account and that still should be. Even in the Jenkins case, they say, look, there's still situations that courts should have the ability to consider the equities of the situation. And during your questioning of opposing counsel, you identified several of the issues here where it's the debtor that is saying I need more time to provide you information. And the bankruptcy trustee says, okay, I'm going to give you that time. And then we don't get this stuff. But let me just point one other thing really quickly here is they didn't even make this objection that our exemptions were, objections to the exemptions were not asserted in a timely manner until the first day of the hearing on the objections of the exemptions, which was February 27th of 2023. If there was ever a justification for arguing that they waived that objection, this is it. It was nearly two years later at the hearing on our objections to their exemptions that they first verbalized that objection. They didn't put it in writing. And the bankruptcy judge asked opposing counsel, why didn't you raise this previously? And Mr. Lepins, who at the time was their attorney, that's when he first made this argument. So if we're talking about waiving . . . Let me ask you, is this your area of law, bankruptcy your specialty? No, it's not. Okay. Well, there may have been more questions for them because the other one asked sort of a big-picture question. But never mind. Proceed. That's okay. But we have people that are helping us. I've got John Paul Stanford here. I won't ask them to argue. He's a bankruptcy attorney. But . . . In any event . . . Now, then there's a question of whether or not it's a fact issue. I think it's a fact issue as to when the meeting of creditors was concluded. And the bankruptcy court judge determined that it was concluded on March 9th. So if that's a fact issue, that is . . . you need an abusive discretion standard of review for that. Now, why was the meeting of creditors continued? I think you've all done a good job of identifying one of the issues, which was that Mr. Langston needed more time. In my brief at pages 28 to 29, I've listed a whole bunch of factors, including the fact that there was additional documentation information that he needed to provide us. There were questions to which he answered that he did not have the information, but he would obtain it and provide it to us. It was clear that his financial statement and bankruptcy schedules were inaccurate and there was information that was missing from that that needed . . . and they needed to be amended, and he agreed to amend these. And these are parts of the reason. There's a whole bunch of other things. There's a big, long list. And then he didn't do any of those things, right? And then I think the court should, again, apply the case-by-case approach it has applied in the past. In this particular instance, you have a . . . it was clear to everybody that this was being continued. There's no doubt about that. They didn't object to it. They consented to it. They agreed to provide us additional information and documentation. They didn't do that. This was a very complicated case by the fact that Mr. Langston was claiming as exempt a whole bunch of money in retirement accounts that he was moving into and out of the retirement accounts. And you have these factual findings. This is . . . again, we also . . . there were multiple meetings of creditors, but there were two bankruptcy cases. Okay, so all of those meetings of creditors weren't in the Joseph F. Langston, Jr. personal bankruptcy case. Some of them were in the Langston Family Limited Partnership bankruptcy case in which Mr. Seidel is the bankruptcy trustee, and you can see that from the record. Now, all of those transcripts were entered as exhibits in the trial, and I cross-examined Mr. Langston because he testified on behalf of the creditor in both of those bankruptcies. And, in fact, there was a whole other meeting of creditors where the recording of the meeting of creditors was accidentally erased by Mr. Sherman, the bankruptcy trustee's office, before we could get it transcribed. So we had to have another meeting of creditors. And so we never did get a transcript of that, and I tried to get that the very same week that that meeting of creditors had taken place. Now, I want to point out one other thing, is that the bankruptcy trustee, Mr. Sherman, is the same Mr. Sherman as in the case that we've been talking about here, the Paris v. Sherman.  It's the exact same bankruptcy trustee, ironically. And he fell on the sword, and he did say, I'm sorry, this is all my fault. Well, he said he did make a mistake, yes, and that, you know, but, you know, things happen. And I think this all comes down, this is a fundamental question of fairness and due process. All right? They are saying that the bankruptcy trustee is the one that continued the hearing. They asked for the hearing to be continued because Mr. Langston needed more time. He agreed to amend and provide us additional information, and then all of a sudden, they're saying, well, too much time has elapsed without this being rescheduled, therefore, you're out of luck, you can't make these arguments, even though they never even made their objections until well after this, when Mr. Sherman said he was concluding the meeting of creditors, they haven't made any objections yet. We made our objections to their exemptions within 30 days of that. And then it wasn't until, what, eight, nine months later, on the day of the hearing on our objections to the exemptions, that they first assert this argument that our objections were untimely. Well, I think their objection was untimely, and I think they waived that. And now, in their brief, they are not even asserting in their point of error that there was any error at all committed by the bankruptcy judge. I don't know if we're supposed to just re-adopt the first point of error that was asserted to the Northern District of Texas, but I don't think it's the job of this Court of Appeals to rewrite their issues for them. I think they have waived this issue because they did not raise this particular issue that they're asserting before this Court in front of the lower courts. And also, I want to point out, the debtor could have moved to conclude the meeting of creditors at any time and never did so. They never did that. And in fact, that's one of the things that was pointed out in Perez v. Sherman. If you read that opinion, one of the issues that this Court pointed out is that the debtor could have moved to conclude the meeting of creditors at any time and never did so. So I think the equities are balanced significantly in favor of the creditor in this particular situation, especially in light of all the just malfeasance of this particular debtor, who is essentially — it's already been ruled that he engaged in all of these improper transactions with all these retirement accounts, and he's just scrambling to come up with any kind of a way to get out of it. All right, Counsel. Thank you very much. Thanks. Thank you, Your Honors. Counsel for Debtor, at the hearing or in response to the objection to exemptions filed that said — or contended such were untimely in his response, so that argument was not waived and the bankruptcy court felt it was not waived either, so it was preserved. His point is maybe they didn't move to continue, but you never moved to conclude. In fact, you waited all the way until their hearing on their objection. Well, Your Honor, we — when they filed their objection to the exemptions in the response, debtor's counsel at the time, in his response, said such were not timely, and then proceeded with the rest of his response. That was long before the hearing. When you say debtor's counsel, this is not the counsel that earlier had said we need more time. No, Your Honor. This is the counsel that says, oh, there's — It was not. It was Mr. Lepins who — I did the appeal as he left to go to pro bono work, so I did the appeal for him. But he was the trial counsel. But in his response, filed right after the objection to exemptions, he contended they were untimely, and so it was well before the hearing. And Jenkins, Your Honor, the Fourth Circuit determined that the trustee made no effort in this case to comply with either part of Rule 2003e, and the reason for doing a case by case and not wanting to have the draconian result, the Fourth Circuit determined, well, so if the trustee announced at the creditor's meeting but maybe didn't file his statement with a docket to 48 hours later, that would be substantial enough compliance to where they didn't want to have the bright-line approach. So accordingly, we would ask this Court to overrule the district court's affirmance of the objection to exemptions and allow Mr. Langston's claim to exemptions. Thank you. Thank you. Thanks, Gerald. To counsel for the parties and to the advocates for assisting us with this case, we'll take it under advisement.